IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Sharon Fields, | ) | C/A No.: 1:10-2136-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Coltec Industries, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Sharon Fields ("Plaintiff") filed this employment action against her former employer Coltec Industries Inc. ("Defendant") on August 16, 2010, seeking recovery under retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") This matter comes before the court on Defendant's motion for summary judgment filed February 27, 2012 [Entry #40]. Plaintiff filed a timely response [Entry #42], and Defendant filed a reply [Entry #43].

All pretrial proceedings in this case were referred to the undersigned on January 1, 2012 pursuant to the provisions 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends that Defendant's motion for summary judgment be granted.

I.      Factual Background

Defendant hired Plaintiff in January 1997 as an account representative for customer sales and service. Am. Compl. at ¶ 10 [Entry #8]. Plaintiff is an African-American female and was 52 years old at the time of her termination. *Id.* at ¶ 12. Plaintiff worked in a department with approximately ten to twelve employees. One other employee in Plaintiff's department was Nakenya Jenkins ("Jenkins"), an African-American female named approximately age 26 at the time of Plaintiff's termination. *Id.* at ¶ 14. All other department employees were white males in their 20s and 30s. *Id.* Plaintiff's manager was Chuck Cwirka ("Cwirka"), who reported to Bill Favenesi ("Favenesi"). Danielle Phillips ("Phillips") was the human resources director.

Plaintiff alleges she engaged in the following allegedly protected activities:

(1) Commenting to Cwirka in approximately 2008 or early 2009 that she felt Favenesi did not listen to and did not comprehend other employees (Plaintiff Dep. 78:13–79:12; 81:7–9);

(2) Commenting to Favenesi in late 2008 or early 2009 that he was "harassing" her by continually correcting her work performance and conduct in relation to Jenkins, (Plaintiff Dep. 83:8–25, 86:23–87:11);

(3) Telling Favenesi once in September 2009 to stop using the term "boy" to address Caucasian men (Plaintiff Dep. 90:23–91:8);

(4) Telling her team of coworkers at some time prior to August 2009 that she objected to the use of the "hear no evil, see no evil, speak no evil" monkeys in a safety campaign because the use of monkeys would be offensive to the African-American men in the facility (Plaintiff Dep. 98:12–99:23, 113:4–7);

(5) Twice objecting to statements from Favenesi wherein he referred to her as "old lady" or "grandma," the most recent objection occurring around or shortly after August 2009 (Plaintiff Dep. 125:7–128:16);

(6) Informing several coworkers that she intended to see an attorney and file some sort of complaint against Defendant (Plaintiff Dep. 118:23–120:25);

2

(7) Telling a coworker that she was going to discuss with OSHA an issue relating to the slowness of getting her ergonomic keyboard reinstalled following the move to a new building and possibly opining whether it was related to her age (Plaintiff Dep. 121:1–123:3); and

(8) Viewing and printing material from the EEOC's website while at work in October 2009 (Plaintiff Dep. 131:15–132:4).

In her Amended Complaint [Entry #8], Plaintiff claims she was terminated in retaliation for engaging in these activities.

Defendant maintains that Plaintiff was voluntarily[1] terminated after a series of events stemming from an incident between her and Jenkins. Specifically, on the morning of Friday, November 20, 2009, Jenkins sent an email to Cwirka stating that Plaintiff had made a "comment [that] was degrading and hurtful in reference to my skin complexion and weight" and that "it is truly becoming a hostile work environment." [Entry #40-5 at 8]. Cwirka forwarded the email to Favenesi, who in turn forwarded it to Phillips. *Id*. Before Favenesi had forwarded the email to Phillips, Jenkins had emailed Phillips directly to report the comment, which she described as "mean, rude, and hurtful" and requested that Phillips contact her so that she could make a complete report. [Entry #40-4 at 21].[2] After receiving the email, Favenesi spoke with Jenkins, who told him that Plaintiff and Kim Nero, another coworker, were discussing the movie *Precious*, in which the main character is an obese, dark skinned African-American woman whose life is in

---

[1] Defendant argues that Plaintiff was voluntarily terminated for failure to sign an agreement as a condition to her employment as more fully discussed below. Plaintiff maintains she was terminated involuntarily.

[2] Defendant has an anti-harassment policy which instructs employees who believe they are victims of harassment to report the same to their department head or to HR to investigate. [Entry #40-3 at 86].

3

shambles. Jenkins' work station was located next to Plaintiff's workstation, where the conversation was occurring, so that Jenkins could clearly hear the conversation. Plaintiff Dep. 166:2–8. According to Jenkins, Plaintiff stated loudly that she did not need to see the movie because she "saw it every day." [Entry #40-7 at ¶ 3].

Plaintiff and Jenkins had a history of conflict and Jenkins therefore believed Plaintiff made the comment to compare Jenkins to the movie's main character. *Id.* at ¶ 4. Nero apparently learned of Jenkins' complaint and sent Plaintiff a text message around 11:25 a.m. stating that Jenkins had complained about their conversation to management and that "she want to file some harassment because we call her fat and black." [Entry #40-3 at 102].

On the following work day, Monday, November 23, 2009, Favenesi, Cwirka, and Phillips (participating via speakerphone) interviewed Jenkins, who recounted the story as she had previously explained to Favenesi. [Entry #40-6 at ¶ 5, #40-7 at ¶¶ 5–6]. Favenesi, Cwirka, and Phillips then interviewed Plaintiff. According to Defendant, Plaintiff became belligerent and insubordinate in the interview and paced around the room, raised her voice, and frequently interrupted Phillips. Phillips Dep. 31:25–32:6; Entry #40-6 at ¶ 6; Entry #40-5 at ¶ 5. Plaintiff admits she was "a little agitated," "frowning," and that she "may have raised [her] voice." Plaintiff Dep. 157:14–15, 191:16. Plaintiff complained that she was not told what Jenkins' complaint was about, despite receiving the text message from Nero the previous Friday. Plaintiff Dep. 156:3–5. Plaintiff also resisted discussing her conversation with Nero, claiming that it was a "personal conversation between me and another employee." Plaintiff Dep. 156:12–14;

Phillips Dep. 31:18–32:6; Entry #40-6 at ¶ 6; Entry #40-6 at ¶ 5. Plaintiff acknowledged making a comment that she did not need to see the movie because "you see that kind of stuff all the time," but she denied that she made the comment with malicious intent. Plaintiff Dep. 155:22–23.

Phillips felt that Plaintiff's demeanor during the meeting was so defiant and hostile that the discussion stood no chance of being productive, and therefore asked Favenesi to pick up the phone and instructed him to send Plaintiff home, which he did. Phillips Dep. 33:4–34:6; Entry #40-6 at ¶ 6; Entry #40-5 at ¶ 5. At this point, Plaintiff was placed on a paid administrative suspension pending the completion of the internal investigation.

Shortly thereafter, Phillips interviewed Nero, who recalled the conversation regarding the movie and stated that she did not know what Plaintiff had intended by her remark, but had not asked Plaintiff for clarification because she "did not want to get involved," and "did not want to touch it because the issue is between her and a coworker." Phillips Dep. 27:2–11; Entry #40-4 at 24–25. Following these interviews, Phillips, Favenesi, and Cwirka discussed the appropriate course of action and all concluded that Nero must have sensed some malice in Plaintiff's remark or she would not have been reluctant to "get involved" or "touch it," or otherwise associate the comment with an "issue between [Plaintiff] and a coworker." *Id.*; Entry #40-6 at ¶ 7; Entry #40-5 at ¶ 6. They also agreed that Plaintiff's conduct during their interview had been insubordinate and uncooperative. Phillips Dep. 62:24–65:3; Entry #40-6 at ¶ 7; Entry #40-5 at ¶ 7.

Phillips recommended that Plaintiff be terminated immediately. Phillips Dep. 36:3–9; Entry #40-5 at ¶ 7; Entry #40-6 at ¶ 8. Favenesi and Cwirka, however, believed that a less severe discipline was appropriate and requested an opportunity to try to coach Plaintiff. *Id*. Therefore, they decided to allow Plaintiff to keep her job if she would sign a Last Chance Agreement ("the Agreement"). Phillips Dep. 35:20–25; Entry #40-6 at ¶ 8; Entry #40-5 at ¶ 7. The Agreement would have allowed Plaintiff to continue her employment if she (1) accepted a one-week paid suspension for violations of company policy, (2) agreed to participate in corrective actions set forth by Defendant, (3) participated in an Employee Assistance Program, and (4) refrained from engaging in future behavior deemed harassing or insubordinate. [Entry #40-3 at 93]. At Phillips' direction, Plaintiff returned the next morning for a second meeting with Phillips, Favenesi and Cwirka, at which time, Favenesi gave Plaintiff the Agreement, and Phillips discussed it with her. [Entry #40-3 at 102]. Plaintiff understood that signing the Agreement was a "condition[] for continued employment." *Id*. Although she understood her job depended on it, Plaintiff refused to sign the Agreement because she considered signing the document to be an admission of wrongdoing, though she acknowledged that the text of the document did not contain such an admission. Plaintiff Dep. 182:3–5, 177:12–16. Plaintiff also acknowledges that "they would have let me come back to work probably" had she signed the Agreement. *Id.* at 185:10–11. The meeting concluded with Plaintiff repeatedly refusing to sign the Agreement, and she left the facility. *Id.* at 182:14–18.

Phillips called Plaintiff the following day, November 25, 2009, and stated that Plaintiff could return to work on Monday, November 30, 2009, if she would sign the

Agreement. *Id.* at 184:1–2; Phillips Dep. 44:10–21. Plaintiff refused this last opportunity to sign the Agreement and return to work. Plaintiff Dep., 185:16–18; Phillips Dep., 44:12–13. Plaintiff did not report to work on Monday and Phillips sent her a letter explaining that Defendant deemed her to have resigned. [Entry #40-4 at 20].

II. Discussion

    A. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non–movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

    B. Title VII and ADEA Retaliation Framework

Both Title VII and the ADEA forbid employers from retaliating against their employees for exercising their rights under the statutes, which are considered "protected activities." 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d). "Protected activities fall into

two distinct categories: participation or opposition . . . . An employer may not retaliate against an employee [for] participating in an ongoing investigation or proceeding . . . nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

Retaliation cases under Title VII and the ADEA proceed according to the well-known three-step burden shifting process first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must make a prima facie case of retaliation by producing evidence that (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between the protected activity and the adverse action. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (analyzing retaliation claims under the ADEA and Title VII simultaneously). Whether the case involves allegations of oppositional or participatory protected activity does not alter the prima facie case that a plaintiff must establish or the remainder of the analysis. *See Harden v. Wicomico Cty.*, No. 10-1734, 2011 U.S. App. LEXIS 13031, at *5 (4th Cir. Jun. 23, 2011) (explaining that the first element of the prima facie case "encompasses [both] categories of protected activities").

If a plaintiff seeks to establish the first element of the prima facie case by producing evidence that she has opposed unlawful activity, the employee's belief that the conduct she opposed violates the statute in question must be objectively reasonable. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006). Where, as here, an employee claims to have opposed a hostile work environment, examining the objective

reasonableness of the employee's opposition requires an analysis of what facts create an actionably hostile working environment. To prove that a work environment is actionably hostile under Title VII and the ADEA, the alleged unwelcome conduct must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), cert. denied, 540 U.S. 940 (2003); *see also Wells v. Gates*, 33 Fed. Appx. 378 (4th Cir. 2009) (applying the standard to an ADEA claim).

If the plaintiff states a prima facie case, the burden shifts to the defendant to . . . articulate a non-retaliatory reason for its action. *Laughlin*, 149 F.3d at 258. "Once the defendant produces evidence of its legitimate non[retaliatory] reason for the adverse employment action, the presumption of discrimination created by the prima facie case is rebutted and 'drops from the case, and [the plaintiff] bears the ultimate burden of proving that she has been the victim of retaliation." *Id.* (internal citations omitted). The plaintiff can meet this burden by producing evidence that would allow a fact finder to conclude that the employer's stated legitimate and non-retaliatory reasons "are merely pretext for discrimination or retaliation." *Darvishian v. Green*, No 08–1672, 2010 U.S. App. LEXIS 25601, at *15 (4th Cir. Dec. 14, 2010). "In practice, . . . the 'pretext' inquiry merges with the plaintiff's ultimate burden to prove that he or she was the victim of intentional discrimination or retaliation." *Id*. at *16.

C. Analysis

1. Protected Activities

The Fourth Circuit has "held that opposition activity is protected when it responds to an employment practice that the employee reasonably believes is unlawful." *Jordan*, 458 F.3d at 338 (analyzing Title VII claims); *see also Cartee v. Wilbur Smith Assocs.*, 2010 U.S. Dist. LEXIS 128745, at *20 (Oct. 6, 2010) (applying same rule to ADEA retaliation case). However, the Fourth Circuit has explicitly rejected the argument that "virtually any complaint about a racist remark" will constitute protected activity that can support a retaliation claim. *Jordan*, 458 F.3d at 341. In reaching this conclusion, the Fourth Circuit balanced the purpose of anti-retaliation statutes against "Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Laughlin*, 149 F.3d at 259 (internal quotation marks omitted). Accordingly, anti-retaliation laws do not "protect employees who, with no more than good faith, complain about conduct that no reasonable person would believe amounts to an unlawful employment practice." *Jordan*, 458 F.3d at 342. Instead, the employee's belief that the conduct of which she complains actually violates the statute in question must be an objectively reasonable one, and whether the employee's belief is reasonable is a question of law for the court. *Id.* at 339.

Defendant argues that Plaintiff has not proven that she engaged in any protected activities under Title VII or the ADEA. Plaintiff admits that three of the eight allegedly-protected activities have no relation to race or age. *See* activities numbered 1, 2, and 7 *supra* at p. 2. The remaining activities Plaintiff claims are protected can be divided into

10

comments Plaintiff believes were racist, negatively related to her age, or related to her plans to file a lawsuit or EEOC claim. The court addresses each in kind.

a. Objections related to racial comments

Plaintiff alleges that she complained to Favenesi once about his use of the word "boy" when greeting Caucasian men. Plaintiff testified that she finds it offensive for a white person to use the word boy to address a man in the presence of black men. Plaintiff Dep. 93:4–10; 95:1–10. Plaintiff also told her team of ten to twelve coworkers that she objected to using the "hear no evil, see no evil, speak no evil" monkeys in a safety campaign because use of the monkeys would be offensive to black men. Plaintiff Dep. 98:6–23. For these objections to constitute protected activities, Plaintiff must show that she had a reasonable belief that she was opposing unlawful conduct under Title VII. The undersigned submits that Plaintiff has failed to meet her burden in this respect.

The Fourth Circuit has strictly construed whether employees are reasonable in believing they are opposing unlawful employment practices. For instance, the Fourth Circuit in *Jordan* found that it was unreasonable to believe that a hostile work environment was created when a coworker responded to a news report about two African Americans arrested for a string of murders by saying "they should put those two black monkeys in a cage with a bunch of black apes and let the apes f—k them." *Jordan,* 458 F.3d at 336 and 340–43. The *Jordan* court also noted that a more forgiving examination of reasonableness would result in protection of countless garden variety complaints and would be "tantamount to a statutory civility code." *Id.*

Plaintiff argues that *Jordan* is distinguishable because it involved a single racial slur that would only cause a hostile work environment if it continued unabated. Therefore, Plaintiff argues that a hostile work environment was created in the instant case because the alleged hostile comments were repeated. The undersigned does not agree that the mere repetition of phrases, such as the use of the word boy to refer to Caucasian employees, provides a reasonable belief of a hostile work environment. Although there is no "mathematically precise test" for determining if an environment is objectively hostile or abusive, the court can evaluate the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *EEOC v. Fairbrook Medical Clinic, P.A.*, 609 F.3d 320 (4th Cir. 2010) (citations omitted). Here, Plaintiff argues Favenesi's use of the word boy was frequent, but she cannot show that it was severe, physically threatening or humiliating, or that it interfered with her work performance. Further, the suggestion to use the "see no evil, hear no evil, speak no evil" monkeys in a safety campaign is akin to an offensive utterance at most that occurred only once. Even considered cumulatively, Plaintiff has not met her burden of showing that she had a reasonable belief that she opposed actions of unlawful conduct.

### b. Objections related to comments about age

Plaintiff also alleges she opposed Favenesi's use of the terms "old lady" and "grandma" to refer to her. Specifically, Plaintiff complains that Favenesi made the comment "Not bad for an old lady" when Plaintiff won the office basketball pool.

Plaintiff Dep. 108:3–11. Additionally, Favenesi referred to Plaintiff as "grandma" shortly after the birth of Favenesi's child in conversations related to Plaintiff's experience in child-rearing. Plaintiff Dep. 109:8–22. Plaintiff has failed to show that she reasonably believed that this conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), *cert. denied*, 540 U.S. 940 (2003); *see also Wells v. Gates*, 33 Fed. Appx. 378 (4th Cir. 2009) (applying the standard to an ADEA claim).

### c. Alleged EEOC activities

Plaintiff alleges that her viewing and printing information from the EEOC's website while at work constitutes protected activity. Plaintiff claims Cwirka and maintenance supervisor John Bailey saw her actions and gave her a "nasty look." Plaintiff's Dep. 136:5–7. In her opposition brief, Plaintiff incorrectly claims that the previously-assigned magistrate judge found that such actions constituted protected activity. [Entry #42 at 8]. However, the magistrate judge's report and recommendation, which was adopted by the district judge, only found that Plaintiff's allegations regarding researching her EEOC claims could not move forward under the participation clause, but were "sufficient at [the motion to dismiss] stage to go forward under the oppositions clause." [Entry #17 at 9].

Plaintiff has failed to set forth a single case from any jurisdiction that recognizes viewing and printing EEOC information as protected activity under the opposition clause. In addition, Plaintiff provides no evidence that Defendant knew or had any reason to know the grounds upon which Plaintiff might file an EEOC claim. Plaintiff has provided

13

no evidence that Defendant believed Plaintiff may have been opposing specific conduct through an EEOC claim. Plaintiff has failed to meet her burden of showing that the viewing and printing of material from the EEOC, even when a supervisor was aware of the same, is protected activity under the opposition clause.

Plaintiff also claims that she engaged in protected activities when she informed several coworkers that she intended to see an attorney and file a complaint or EEOC claim against Defendant. However, Plaintiff has pointed to no evidence that the decision-makers in this case, Cwirki, Favenesi, and Phillips, had any knowledge of these conversations. Therefore, Plaintiff cannot show that Defendant retaliated against her for engaging in activities of which it had no knowledge. Plaintiff has failed to meet her burden of showing she engaged in protected activities related to her EEOC research or lawsuit plans.

    2.    Causal Connection

Even if Plaintiff were able to show that she engaged in protected activities, she is not able to show that there is a causal connection between the protected activities and her termination. Plaintiff argues that the two are causally connected because she was terminated within a few months of the alleged protected activity. However, the two to three month temporal proximity is insufficient to show causation in light of the undisputed evidence that Phillips, who was not aware of Plaintiff's allegedly-protected activity, wanted to terminate Plaintiff after her initial interview. Phillips Dep. 36:3–9; Entry #40-5 at ¶ 7; Entry #40-6 at ¶ 8. Additionally, Favenesi and Cwirka, who were aware of at least some of Plaintiff's allegedly-protected activity, recommended giving

14

Plaintiff an opportunity to keep her job through coaching. *Id*. Therefore, Plaintiff has not shown a causal connection between her termination and her allegedly-protected activity.

      3.    Defendant's Legitimate Non-Discriminatory Reason

Assuming arguendo that Plaintiff could prove a prima facie case, the burden then shifts to Defendant to articulate a legitimate non-retaliatory reason for Plaintiff's termination. In considering the reasons for an employer's actions, courts are deferential and limit their inquiry to whether the reason for the action is illegal, not whether the action is correct or wise. *See DeJarnette v. Corning*, 133 F.3d 293, 298–99 (4th Cir. 1998) (Anti-discrimination laws are not "vehicle[s] for substituting the judgment of a court for that of the employer," and the court does "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.") (internal citations omitted). It is undisputed that Plaintiff would not have been terminated had she signed the Agreement. Plaintiff Dep. 185:10–11.

Here, Defendant had sufficient legitimate and non-retaliatory reasons for requiring Plaintiff to sign the Agreement to continue her employment. First, Phillips, Cwirka, and Favenesi all concluded that Plaintiff's remark about the movie *Precious* was most likely intended as a mean-spirited insult to Jenkins. [Entry #40-5 at ¶ 6; Entry #40-6 at ¶ 7]. Moreover, Plaintiff's conduct during the investigation was defiant, uncooperative, and insubordinate. [Entry #40-5 at ¶ 5; Entry #40-6 at ¶ 6].

Finally Plaintiff has produced no evidence of pretext other than temporal proximity, the same evidence that she relied on to establish a prima facie case. There is no evidence that Defendant manufactured the incident with Jenkins in order to discipline

Plaintiff. Instead, it is undisputed that Cwirka and Phillips received a complaint from Jenkins and Plaintiff was disciplined accordingly. Additionally, it is undisputed that Plaintiff could have kept her job by signing the Agreement. Plaintiff has failed to meet her burden of showing that her termination was retaliatory and the undersigned recommends Defendant be granted summary judgment.

II. Conclusion

For the foregoing reasons, it is recommended that Defendant's motion for summary judgment [Entry #40] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

August 2, 2012
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).