IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Sharon Fields, ) | |
| ) | C/A No. 3:10-2136-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Coltec Industries, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Sharon Fields brings this action against her former employer, Defendant Coltec

Industries, Inc., pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.

("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. ("ADEA").

In an amended complaint filed December 8, 2010, Plaintiff asserts that she was retaliated against for

engaging in protected activity. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C.,

this matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling.

This matter is before the court on Defendant's motion for summary judgment, which motion

was filed on February 27, 2012. On March 15, 2012, Plaintiff filed a response in opposition to

Defendant's motion, to which Defendant filed a reply on March 26, 2012. On August 2, 2012, the

Magistrate Judge issued a Report and Recommendation in which she recommended that Defendant's

motion for summary judgment should be granted. Plaintiff filed objections to the Report and

Recommendation on August 20, 2012. Defendant filed a response to Plaintiff's objections on

September 7, 2012.

## I. FACTS

The facts are thoroughly discussed in the Report and Recommendation. Briefly, Plaintiff,

who is black, was hired by Defendant in January 1997 as an account representative.   She was 52

years old at the time of her termination.  Plaintiff alleges that she engaged in the following allegedly

protected activities:

1.   She commented to her manager, Chuck Cwirka, that his manager, Bill Favenesi, did not comprehend well.

2.   She accused Favenesi of "nitpicking" her performance because of complaints made to him by Nakenya Jenkins, one of Plaintiff's co-workers.  She stated that she wanted to file a complaint because she felt she was being harassed.

3.   She told Favenesi that she did not like his use of the word "boy" when addressing white co-workers in the presence of black co-workers.

4.   She objected to the proposed use by her "team" of an image of "see no evil, speak no evil, hear no evil" monkeys as part of a safety campaign when the image would be viewed by black employees.

5.   She objected to several instances of being called "old lady" and "grandma" by Favenesi after the birth of her first granddaughter.

6.   She told co-workers she was going to file a complaint with the Equal Employment Opportunity Commission (EEOC).

7.   She threatened to complain to OSHA if her ergonomic keyboard was not installed.

8.   She viewed and printed some material from the EEOC website, and Cwirka was aware that she had done so.

ECF No. 40-3, 22-38.

Plaintiff and Jenkins, her co-worker, did not have a collegial relationship.  On November 20,

2009, Plaintiff was talking to another employee, Kim Nero, about the movie "Precious," in which

the main character is obese and dark-skinned.  Plaintiff retorted that "I see that stuff all the time.  I

don't want to pay money to see that."  ECF No. 40-3, 42.  Jenkins complained to Cwirka via email

that she felt Plaintiff had made a hurtful comment in reference to Jenkins' skin complexion and

weight, and that she felt Plaintiff was creating a hostile work environment. Cwirka forwarded the email to Favenesi, who forwarded it to Danielle Phillips, the human resources director. On Monday, November 23, 2009, Plaintiff was called into a meeting with Cwirka, Favenesi, and Phillips, who participated via teleconference. Plaintiff acknowledged making the statement but stated that she was engaged in a personal conversation that did not involved Jenkins. ECF No. 40-3, 42. Plaintiff refused to discuss the comment and "got a little agitated because [she] couldn't believe they were calling [her] in accusing [her] of something that [she] had no knowledge of and then they wouldn't tell [her] what [she] did." Id. Plaintiff was placed on paid administrative leave.

At Phillips' request, Plaintiff returned to work the next day, November 24, 2009, for further discussions. Favenesi presented Plaintiff with a Last Chance Agreement that set conditions for Plaintiff's continued employment, i.e.: (1) Plaintiff would accept a one-week paid suspension for violations of company policy; (2) Plaintiff would participate in corrective actions set forth by Defendant; (3) Plaintiff would participate in an Employee Assistance Program; and (4) Plaintiff would refrain from engaging in harassing or insubordinate conduct. ECF No. 40-3, 93. Plaintiff refused to sign the Agreement and was sent home again.

Phillips called Plaintiff at home on November 25, 2009, and requested Plaintiff to return to the office on November 30, 2009 to discuss signing the Last Chance Agreement. Plaintiff replied that she would not sign the Agreement because she had done nothing to offend Jenkins. When Plaintiff did not return to work on November 30, 2009, Phillips sent her a letter stating that Plaintiff had refused to cooperate in the investigation of Jenkins' allegations and that Plaintiff acted in a rude, belligerent, and insubordinate manner. Because Plaintiff had refused to return to work, Defendant deemed Plaintiff to have resigned from employment effective November 25, 2009. ECF No. 40-3,

3

95.  It is Plaintiff's contention, as articulated in the amended complaint, that she was terminated in retaliation for opposing discriminatory practices at Defendant's workplace.

Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission on December 21, 2009.  Plaintiff alleged discrimination based on race and age,[1] as well as retaliation, as follows:

> I.    PERSONAL HARM: A.  I was intimidated and harassed from on or about February 27, 2009 to November 25, 2009.  B.  I was disciplined in the form of a suspension on November 23, 2009.  C.  I was discharged from my employment on November 25, 2009.
>
> II.   RESPONDENT'S REASON(S) FOR ADVERSE ACTION(S): A.  No reason given.  B. & C.  Violation of code of conduct.
>
> III.  COMPLAINANT'S CONTENTION(S): A.  On several occasions I was subjected to age related comments from younger, white, mail co-workers.  Management was aware of this, yet no corrective action was taken.  B.  I contend the reason given was a pretext.  I was subjected to disparate treatment based on a personal and private conversation another co-worker and I had regarding a movie.  The conversation was overheard by a younger employee and taken out of context.  I was harassed and intimidated by managment regarding the conversation.  When I refused to sign the "agreement," because I did not feel I violated any codes of conduct, I was sent home and later terminated.  I believe Respondent terminated me on the hearsay of a younger employee and in retaliation for my concerns and complaints in the past regarding unequal treatment.  My team consisted of all white males and one younger female employee.  I further believe I was "set up" and "driven out" of the company because of my age and race.
>
> IV.   DISCRIMINATION STATEMENT: I therefore believe that I have been discriminated against on the basis of my race (black) and age (52 . . . ) in violation of the SC Human Affairs Law, as Amended, Title VII of the US Civil Rights Act of 1964, as amended, the US Age Discrimination in Employment Act of 1967, as amended and in retaliation for my opposition to employment practices made unlawful by the preceding laws.

ECF No. 40-3, 68.

---

[1] As noted herein above, Plaintiff's sole cause of action is for retaliation.

4

## II. DISCUSSION

A.    Summary Judgment Standard

Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56. The relevant inquiry on summary judgment is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Tuttle v. McHugh, 457 F. App'x 234, 236 (4th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). An otherwise properly supported motion for summary judgment will not be defeated by the existence of merely any factual dispute, no matter how minor; rather, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Id. (quoting Anderson, 477 U.S. at 247–48). To withstand a summary judgment motion, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial. Id. (citing Fed. R. Civ. P. 56(c)(1)). Neither conclusory allegations, speculative scaffolding of one inference upon another, nor the production of a "mere scintilla of evidence" in support of a nonmovant's case suffices to forestall summary judgment. Id. at 236-37 (citing cases).

B.    Applicable Law

Both Title VII and the ADEA prohibit an employer from retaliating against an employee because the employee opposed any practice made an unlawful employment practice by Title VII or the ADEA. See 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). Opposition activity is protected when it responds to an employment practice that the employee reasonably believes is unlawful. Jordan v. Alternative Res. Corp., 458 F.3d 332, 338 (4th Cir. 2006) (citing cases). Protected opposition activities may include voicing one's own opinions in order to bring attention to an employer's

discriminatory activities as well as complaints about suspected violations.  EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005) (quoting Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543-44 (4th Cir. 2003)).  The analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one.  Kennedy v. St. Joseph's Ministries, Inc., 657 F.3d 189, 199 (4th Cir. 2011) (citing Jordan, 458 F.3d at 339).  The court must balance the purpose of Congress of protecting persons engaging reasonably in activities opposing discrimination, against Congress's equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.  Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (citing Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981)).  Complaining employees are protected by Title VII once they have an objectively reasonable belief that a Title VII violation has occurred.  Jordan, 458 F.3d at 343.

The elements of a prima facie retaliation claim under Title VII or the ADEA are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action.  Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004)) (Title VII); Tuttle v. McHugh, 457 F. App'x 234, 237 (4th Cir. 2011) (ADEA).

Once the plaintiff has established his prima facie case, the burden of production shifts to the defendant to put forth a legitimate, nondiscriminatory reason for the action taken.  Id. (citing cases). If the defendant makes this showing, the plaintiff must then show by a preponderance of the evidence that the proffered reason is only a pretext for retaliation.  Id. (citing Price v. Thompson, 380 F.3d 209, 212 (4th Cir.2004)).  The plaintiff's burden to establish pretext merges with his ultimate burden of persuasion, which remains with the plaintiff throughout the McDonnell Douglas framework.  Id.

(citing cases).

C.    <u>Magistrate Judge's Report and Recommendation</u>

The Magistrate Judge found that Plaintiff failed to prove that she engaged in any protected activities under Title VII or the ADEA, and thus could not make out a prima facie case of retaliation.

The Magistrate Judge noted that Plaintiff admitted that her comments to Cwirka regarding Favenesi, her accusation that Favenesi was "nitpicky" regarding her work performance, and her complaints regarding her ergonomic keyboard had no relation to race or age. <u>See</u> Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, ECF No. 42 (abandoning these claims). The Magistrate Judge grouped Plaintiff's remaining alleged opposition activities into three categories: (1) objections related to comments about race; (2) objections related to comments about age; and (3) alleged EEOC activities.

The Magistrate Judge found that Plaintiff's objections to comments about race and age raised the issue of whether Plaintiff opposed a hostile work environment. A hostile work environment is created when discriminatory conduct is severe or pervasive enough to create a subjectively and objectively hostile or abusive work environment. <u>Wells v. Gates</u>, 336 F. App'x 378, 388 (4th Cir. 2009) (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21-22 (1993)). In determining whether discriminatory conduct comprises a hostile work environment, the court must consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. <u>EEOC v. Fairbrook Med. Clinic, P.A.</u>, 609 F.3d 320, 328 (4th Cir. 2010) (quoting <u>Harris</u>, 510 U.S. at 23).

The Magistrate Judge determined that Favenesi's use of the word "boy" in the presence of

black males, but directed at white males, was not severe, physically threatening or humiliating. The Magistrate Judge also found that the suggestion of using monkeys in a safety campaign was an isolated event. Thus, the conduct opposed by Plaintiff did not rise to the level of a hostile work environment. The Magistrate Judge further determined that Favenesi's few references to Plaintiff as an "old lady" and "grandma" could not reasonably be considered sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. Thus, according to the Magistrate Judge, Plaintiff did not meet her burden of showing that she engaged in protected activity by opposing a hostile work environment.

As to Plaintiff's claim that she was retaliated against for viewing and printing EEOC information, the Magistrate Judge noted that Plaintiff failed to set forth a single case from any jurisdiction that recognizes mere research regarding EEOC rights as constituting protected activity under the opposition clause. See 42 U.S.C. § 2000e-3(a) (making it unlawful to discriminate against an employee for making a charge). The Magistrate Judge also noted that, to the extent that Plaintiff mentioned to co-workers that she was going to file an EEOC claim against Defendant, there is no evidence any decisionmaker in the case–i.e., Cwirki, Favenesi, and Phillips– had any knowledge of her conversations. The Magistrate Judge concluded that Plaintiff failed to meet her burden of showing she engaged in protected activities related to her EEOC research or lawsuit plans.

The Magistrate Judge next determined that, even if Plaintiff were able to show that she engaged in protected activities, she was unable to establish a causal connection between the protected activities and her termination. Specifically, the Magistrate Judge noted that Phillips, the decisionmaker with regard to Plaintiff's termination, was not aware of Plaintiff's alleged opposition activities. In addition, the Magistrate Judge found the two or three month span between any alleged

opposition activity and Plaintiff's termination was inadequate to demonstrate temporal proximity.

Finally, the Magistrate Judge found that, even if Plaintiff were to make out a prima facie case, she was unable to overcome Defendant's legitimate, nonretaliatory reason for her discharge. As described above, Plaintiff refused to execute the Last Chance Agreement and was uncooperative and insubordinate in her dealings with Phillips, Faveneski, and Cwirka. The Magistrate Judge determined that Plaintiff produced no evidence of pretext. Accordingly, the Magistrate Judge recommended that Defendant's motion for summary judgment be granted.

D.    Plaintiff's Objections

Plaintiff first asserts that the Magistrate Judge erred in finding that the objections based on race and age did not constitute protected activity. The court disagrees. The existence of a hostile work environment cannot be predicated upon acts that are isolated or genuinely trivial. See Carter v. Ball, 33 F.3d 450, 461 (4th Cir. 1994). The court agrees with the Magistrate Judge that the comments identified by Plaintiff did not constitute an abusive working environment such that she opposed an unlawful employment practice. Plaintiff's objection is without merit.

With regard to the EEOC information printed off the website, Plaintiff contends that her conduct was tantamount to a plan to file an EEOC charge. The court is not persuaded that the mere viewing of a website or printing of materials constitutes opposition to an unlawful employment practice. Moreover, Plaintiff has produced no evidence of what, if any, practice she was opposing by printing the EEOC information. Plaintiff's objection is without merit.

Plaintiff further argues that the Magistrate Judge erred in finding no causal connection between any opposition activity and Plaintiff's termination. The court disagrees. To the extent that Plaintiff's objections to comments regarding race or age could be construed to constitute opposition

activities, Plaintiff's comments occurred at least two to three months before she was terminated. <u>See</u> <u>Pascual v. Lowe's Home Ctrs., Inc.</u>, 193 F. App'x 229, 233 (4th Cir. 2006) (noting that a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity) (quoting <u>Price v. Thompson</u>, 380 F.3d 209, 213 (4th Cir. 2004)). With respect to the EEOC materials, Plaintiff observes that she viewed the website and printed information only three weeks before her termination. For the reasons stated hereinabove, the court concludes that this conduct did not comprise opposition activity, and thus cannot constitute a causal connection based on temporal proximity. Plaintiff's objection is without merit.

Plaintiff finally argues that Defendant's proffered reason for her termination, that she refused to sign the Last Chance Agreement, is different from the reason articulated at the time Plaintiff ceased working for Defendant, which was that Plaintiff voluntarily resigned when she failed to return as instructed. Plaintiff contends that Defendant's change in stance constitutes a post hoc explanation for Plaintiff's discharge, and thus evidence of pretext.

The fact that an employer has offered inconsistent post-hoc explanations for its employment decisions is probative of pretext. <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 647 (4th Cir. 2001) (citing <u>EEOC v. Sears Roebuck</u>, 243 F.3d 846, 852-53 (4th Cir. 2001)). In this case, however, the court discerns no pretext for retaliation. There is no dispute that Jenkins believed Plaintiff had made a derogatory comparison of Jenkins to a character in the movie, "Precious." Jenkins lodged a complaint that was investigated by Cwirka, Favenesi, and Phillips. Plaintiff reacted in an unprofessional manner. Whether she voluntarily resigned because she refused to sign the Last Chance Agreement, or whether she was terminated because she refused to sign the Last Chance

Agreement, there simply is no foundation in the record to support a finding that Plaintiff suffered an adverse employment action because she engaged in protected opposition activity. Plaintiff's objection is without merit.

### III. CONCLUSION

The court concurs in the Report and Recommendation of the Magistrate Judge. Defendant's motion for summary judgment (ECF No. 40) is **granted**, and the case dismissed, with prejudice.

**IT IS SO ORDERED**.


/s/ Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina

September 26, 2012